IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **ANGEL GUSTAVO ROSADO-QUIÑONES** | * | CIVIL NO. |
| | * | |
| Plaintiff, | * | |
| | * | ADEA & TITLE VII |
| v. | * | (Discrimination and Retaliation) |
| | * | |
| PUERTO RICO TELEPHONE COMPANY/ | * | Plaintiff demands trial by jury |
| CLARO | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW plaintiff, ANGEL GUSTAVO ROSADO-QUIÑONES, through undersigned counsel and most respectfully states, alleges and prays as follows:

### 1. Nature of Action

1.1   This is an action under the Age Discrimination in Employment Act, 29 U.S.C. 621 *et seq*. and Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.,* seeking compensatory damages, back pay, interest on the back pay, front pay, punitive damages, attorney's fees and the reimbursement of litigation costs consequent to (a) age discrimination, and (b) reprisals taken against Plaintiff Rosado for engaging in prior Equal Employment Opportunity activity consisting in the (i) exercise of the right to free speech and association by planning the organization of a group to challenge the employer imposition of changes to PRTC Retirement Plan, and (ii) for enforcing the application of the rules and regulations of the company in the matter of a sexual harassment

1

complaint received by plaintiff as Supervisor and for denouncing the unjust treatment of one of plaintiff's supervisees.

1.2   Based upon the same set of operative facts, Plaintiff Rosado also seeks compensatory and punitive damages pursuant to a supplemental cause of action under Puerto Rico Laws No. 100 of June 30, 1959, as amended, which prohibits discrimination because of age and retaliation and Law No. 115 of December 20, 1991, 29 L.P.R.A: 194a *et seq.*, which prohibits retaliation.

## 2. Jurisdiction and Venue

2.1   The Court has subject matter jurisdiction under 28 U.S.C. 1331 for those causes of action that arise from a federal statute, in this case the ADEA and Title VII of the Civil Rights Act, or the Constitution of the United States.

2.2   This Court also has jurisdiction over all and any claims brought under Puerto Rico laws, stemming out of the same nucleus of operative facts, pursuant to 28 U.S.C. 1367.

2.3   Venue lies with this Court since the facts alleged in this complaint occurred within the jurisdiction of Puerto Rico and the compensatory relief sought exceeds the jurisdictional amount in controversy.

2.4   A formal complaint of age discrimination and retaliation was filed with the Antidiscrimination Unit of the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission on March 11, 2010, uaday10-144c and 16H-2010-00286C.  A Notice of Right to Sue was issued and mailed by the EEOC on November 16, 2010.

2.5   Consequently, Plaintiff has fulfilled all conditions precedent to jurisdiction prior to instituting this lawsuit, as necessary, and has otherwise exhausted his administrative remedies.

3.   *The Parties*

3.1   Plaintiff Angel Gustavo Rosado-Quiñones was born on April 28, 1960, thus he is 50 years of age.

3.2   Plaintiff Rosado is an electrical engineer trained in the Mayaguez Campus of the University of Puerto Rico who started working for the Puerto Rico Telephone Company (hereinafter, PRTC) on the 10th of November, 1986 and based upon his merits and job performance has escalated the corporate organizational structure accomplishing the managerial level at various echelons of authority.

3.3   Defendant, the Puerto Rico Telephone Company is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in the Commonwealth of Puerto Rico.

3.4   From 1974 until March 2, 1999, the Telephone Authority of the Commonwealth of Puerto Rico owned 100% of PRTC's stocks.  On or about May 5, 1994, the Puerto Rico Communications Corporation merged with the Telephone Authority and the latter was the surviving company.

3.5   On or about March 2, 1999, the Telephone Authority sold a controlling interest of PRTC to GTE Holdings (Puerto Rico) LLC, a wholly owned subsidiary of GTE International Telecommunications Incorporated, an affiliate of GTE Telephone Operating & GTE

System Telephone Companies. Under this new ownership the holding company is renamed Telecommunications of Puerto Rico.

3.6 On June 30, 2000 Bell Atlantic Corporation and GTE Corporation merged into one company, Verizon Communications.

3.7 During the month of April 2006 Verizon Communications announced it had agreed to sell its stakes in the PRTC to America Movil of México. The ownership transfer was completed on or about December 31, 2006.

3.8 During the year 2007, after litigation with the "Junta Reglamentadora de Telecomunicaciones de Puerto Rico", all other PRTC stock owned by Popular, Inc., the Government of Puerto Rico and the PRT Employee Stock Ownership Plan and Trust were acquired by America Movil.

3.9 At present, America Movil is the 100% owner of the Telecommunications of Puerto Rico which is the PRTC's holding company.

3.10 CLARO is the wireless arm of the PRTC introduced after the total acquisition of the PRTC by America Movil.

3.11 However, after total acquisition, America Movil changed the name of PRTC to CLARO.

3.12 Consequently, the Plaintiff has been an employee of the PRTC and/or CLARO, (hereinafter, collectively referred to as "the company") without interruption since November 10, 1986, because the changes in ownership have occurred within the holding company.

3.13    At all times relevant to the complaint Defendant has continuously had more than 15 employees and has continuously acted as Plaintiff's employer under the purview of federal and state antidiscrimination laws.

### 4. *Statement of the facts*

4.1     During the year 2009 Defendant informs its employees that the Retirement Plan of Managerial Employees was going to be frozen and substituted with a new plan known as "Cash Balance".

4.2     A meeting was held with the affected employees and an example used to illustrate the consequences of the Retirement Plan change to a "Cash Balance".  The example was coincidentally very similar to Plaintiff's situation – an employee with less than 10 years for retirement - and indubitably established that the new plan negatively affected this group's retirement benefits.

4.3     That is, under the pre-2009 retirement plan the benefits for the employees in the last third of tenure incremented exponentially, while during the first two-thirds of the tenure the increment was lineal.  The new Cash Balance Plan did not provide for this difference, thus the employees in the last third of tenure, all necessarily older than 40 years of age, were deprived of this benefit.

4.4     Plaintiff sought more information regarding the new plan and gathered his colleagues in similar situation to receive an orientation from an attorney in order to determine if the new Cash Balance plan, scheduled to be put into effect on October 1st, 2009, could be challenged in court.

4.5     Throughout this information gathering process Plaintiff contacted the Director of Compensation of the company, Ms. Zoraida Báez, and specifically requested that he be given his then current balance with the Retirement Plan in order to be able to compute the impact in total benefits that the new Cash Balance would have in his particular case. As of this date, such information has not been provided.

4.6     Once the request was made to Ms. Baez, the company started an investigation to ascertain if a group was being organized for the purpose of impeaching the Cash Balance plan.

4.7     Two meetings, organized by Plaintiff, were held, with the expectation of a third meeting with an attorney for the final evaluation of the viability of bringing to court the complaints regarding the change in the retirement plan.

4.8     After the second meeting Plaintiff received a disciplinary action consisting of a five day suspension of pay and work.

4.9     According to the "official" documents the reason for the disciplinary action was that Plaintiff allegedly violated the practices and procedures of the company by enforcing the investigation of a series of complaints of sexual harassment brought forth by a group of employees against their supervisor who was, in turn, one of Plaintiff's supervisees.

4.10    Plaintiff initially received an informal complaint of sexual harassment in telephone conversations with two employees. This telephonic complaint was followed by a letter which Plaintiff considered to be a formal administrative complaint of sexual harassment.

4.11   In following the company's regulations Plaintiff thus contacted the Director of Labor Relations, Attorney Lida Ramírez, to inform the findings and request the assignment of an Officer to investigate the allegations of sexual harassment.

4.12   A few days after requesting in writing that the Labor Relations division investigate the allegations of sexual harassments that were brought to Plaintiff's attention by a group of employees the suspension letter was delivered.

4.13   The disciplinary action was summarily applied without any prior investigation or any other cautionary measure to preserve Plaintiff's rights to a due process, as recognized by the company's own regulations.

4.14   Furthermore, and perhaps more importantly, Plaintiff's disciplinary action and suspension were covertly published by the company in order to debilitate Rosado's moral standing with the group that was planning to impeach the Cash Balance plan.

4.15   Plaintiff met with his then immediate second level supervisor, Eng. Héctor Rosario and the Principal Operations Officer, Eng. Mario Barrera, requesting their intervention to rescind the suspension.  However, the response Plaintiff received was that the company was not going to change its decision.

4.16   Plaintiff did not formally request reconsideration nor appealed the suspension because he was concerned about retaliation against his wife, also an employee with the company.

4.17   Then, for the third meeting of the group to impeach the Cash Balance Plan, only an insignificant number of employees showed up and actually three individuals of the small group where from the Security Division of the company.  These Security employees

were not invited by anyone, nobody knew they were going to show up and after the meeting these uninvited "guests" never contacted anyone in the group seeking further information regarding the purpose of the meeting.

4.18   During the last week of June 2009 Plaintiff received a call from Mr. Angel Escudero from the Security Division of the company requesting a meeting to discuss a situation with an employee who was directly supervised by Rosado.  Escudero requested that Rosado interrupt his vacation leave in order to conduct the meeting. Plaintiff refused.

4.19   Upon returning to work Eng. Héctor Rosario informs Plaintiff's then immediate supervisor, Mr. José Asencio, that Rosado was not telling all the truth regarding the "Montalvo situation".  Montalvo is the employee about whom Escudero wanted to meet with Plaintiff, a meeting which was still pending at the time of Rosario's commentaries to Asencio.

4.20   After Plaintiff's return from regular vacation leave, the meeting regarding the "Montalvo situation" was then held with Escudero.  Plaintiff was summoned to provide certain documents and to participate in various meetings with Escudero.

4.21   Then when the report about the "Montalvo situation" was issued by Escudero, meeting was held to discuss the findings and Plaintiff was beckoned to attend.  Present at the meeting were Richelly Pérez, Interim Director of the Human Resources and Labor Relations Office, Gilda Vélez, the Investigative Officer, Maxi Morales, Manager of Labor Relations, José Asencio (by phone) and Plaintiff.  The meeting was called to discuss the appropriate sanction, since the investigation had already concluded.

4.22   The "situation" was that an anonymous tip to the "Ethics Line" reported that Montalvo did not comply with his work schedule. The investigation supposedly revealed that Montalvo had certified he had been working although he was away from the office and doing things that were not work-related.  As mid-management Montalvo had some leeway regarding formal office hours.

4.23   The Montalvo investigation was commenced by Plaintiff's immediate supervisor, Asencio with the Office of Security, while Plaintiff was away in regular vacation leave. The investigation continued upon Plaintiff's return.

4.24   At the meeting Plaintiff was asked, as Montalvo's immediate supervisor, what should be done regarding the application of any disciplinary action.  Plaintiff suggested a suspension.  However, Pérez said that Montalvo should be dismissed from employment. Plaintiff disagreed and so stated, indicating that the dismissal sanction was too severe in relation to the infraction. Asencio initially leaned towards suspension and then agreed with the dismissal.

4.25   Plaintiff insisted that the dismissal sanction was too severe; that during Plaintiff's supervision Montalvo had kept a clean record; Montalvo had more than 29 years of unscathed and loyal service to the company and needed only a few months for retirement.  More importantly, Plaintiff denounced and that in a similar situation which had been investigated by Gilda Vélez but involved a much younger employee with far less years of service and far more offensive and abusive inappropriate conduct, the sanction of dismissal of employment as a disciplinary action was not even suggested.

4.26   Later Plaintiff was urgently summoned to a meeting with Asencio and Mr. Gerald Butler, Director of Operations.  At the meeting, Plaintiff was instructed to deliver to Montalvo the dismissal letter.  Once again Plaintiff objected indicating that the extreme sanction of dismissal was not justified.

4.27   On January 18, 2010 Plaintiff personally hand delivered the dismissal letter to Montalvo acting in accordance with the instructions received from his superiors.  At the meeting with Montalvo Gilda Vélez was also present.  Vélez was the Investigative Officer in Montalvo's situation and in the other case involving similar allegations in which a younger employee with a shoddier set of facts received no sanction whatsoever.

4.28   That same day, January 18, 2010, upon returning to his office Plaintiff was summoned by his immediate supervisor, Asencio, and another disciplinary action was bestowed upon Plaintiff - suspension of pay and work for six days.  The reason alleged by the company was that Plaintiff had failed to prevent the conduct of Montalvo.

4.29   Plaintiff had a scheduled surgery thus immediately after receipt of the second disciplinary action he commenced a planned medical leave.  While on leave on January 28, 2010 Plaintiff was moved to a new position as Manager of Engineering and Construction of Internal Plant and notified of such transfer by text message sent by Asencio.  In the new position Plaintiff's immediate supervisor would by Eng. Héctor Rosario.

4.30   The consequence of the accumulation of two disciplinary actions in the same period of time, as defined by the company´s personnel regulations, is the escalation of the intensity of any further sanctions. In considering this particularity and fearing the

beginning of a pattern of unjustified imposition of sanctions to eventually support other more intense disciplinary actions, Plaintiff did request a formal reconsideration.

4.31   On April 26, 2010 the company's decision in reconsideration of the challenged sanction was to reduce the suspension from six to five days.  By then, Plaintiff had already filed the administrative complaint of discrimination with the ADU and the EEOC.

4.32   Plaintiff requested further reconsideration but it was denied on May 5, 2010.

4.33   After this second denial the five day suspension was applied and enforced.

4.34   Then, when the time came for compensation review, Plaintiff was not awarded any salary increases.

4.35   Plaintiff has been unjustly deprived from work and salary, his work record has been unjustifiably disgraced, and he has been personally humiliated by Defendant in order to negatively affect Plaintiff's moral standing with the employees of the company, diminish his power of assembly and defuse any movement to denounce age discrimination, such as is evident in the Montalvo situation and the unilateral decision to change the Retirement Plan, and sexual harassment within the company.

4.36   Plaintiff has experienced feelings of anger, loss, frustration, sorrow, depression and anxiety.

## 5.   First Cause of Action
### Retaliation for denouncing Sexual Harassment

5.1   The equal employment opportunity provisions of Title VII of the Civil Rights Act prohibit discrimination on the basis of sex, which encompasses sexual harassment, and further prohibits retaliation for having participated in the investigation of any claim of discrimination

5.2    Plaintiff fulfilled his responsibilities under the law by receiving, channeling and insisting that the complaints of sexual harassment of his employees be investigated and action taken by the company.

5.3    The company's response to Plaintiff's Title VII protected activity was the imposition of a disciplinary sanction consisting in the suspension of work and pay for a period of five days.

5.4    Defendant's actions violate the equal employment opportunity provisions of Title VII of the Civil Rights Act that prohibit retaliation.

5.5    Plaintiff suffered physical, psychological, psychiatric, emotional and economic damages as a direct consequence of the complained illegal conduct.

5.6    Defendant as Plantiff's employer under the purview of the law is liable for the complained illegal conduct.

## 6.    Second Cause of Action
### *Retaliation for denouncing Age Discrimination*

6.1    The Age Discrimination in Employment Act (ADEA) requires that "all personnel actions affecting employees … at least 40 years of age … be made free from any discrimination based on age".

6.2    The ADEA also prohibits retaliation against an employee who complains of or denounces age discrimination.

6.3    The unilateral decision by the company to change the retirement plan to a Cash Balance Plan that adversely affects the interests and rights of the employees in the last third of employment, precisely those employees with more than 40 years of age, was perceived

by Plaintiff as age discrimination and as such the purpose of the meetings was to organize legal action to vindicate their rights.

6.4   Furthermore, in opposing the extreme sanction of dismissal in the Montalvo situation Plaintiff specifically referenced age as a deciding factor.

6.5   The immediate response by Defendant in the retirement plan situation was to sanction Plaintiff with the five days suspension of work and pay.

6.6   Likewise, the immediate response by Defendant in the Montalvo situation, which adjoined the retirement plan denouncement, was an enhanced disciplinary action, this time a suspension of six days from work and pay.

6.7   The denounced actions violate the anti-retaliation provisions of the Age Discrimination in Employment Act.

6.8   Plaintiff suffered physical, psychological, psychiatric, emotional and economic damages as a direct consequence of the complained illegal conduct.

6.9   Defendant is liable for the denounced illegal conduct.

## 7.   Third Cause of Action
### Puerto Rico Anti-discrimination law

7.1   The denounced discriminatory and retaliatory actions, as previously specified, also constitute violations of Puerto Rico Laws No. 100 of June 30, 1959, as amended, and Law No. 115 of December 20, 1991, as amended, which prohibit retaliation in seeking the vindication of civil rights.

7.2   Plaintiff suffered physical, psychological, psychiatric, emotional and economic damages as a direct consequence of the complained illegal conduct.

7.3   Defendant is liable under Puerto Rico laws as Plaintiff's employer.

7.4   Plaintiff also requests the application of the double compensation provisions of 29 L.P.R.A. 146(a)(1).

## 8.   Relief Sought

8.1   Plaintiff Rosado-Quiñones demands trial by jury.

8.2   Defendant's previously specified actions have caused Plaintiff Angel Gustavo Rosado Quiñones to suffer past and future pecuniary losses, emotional pain, suffering, inconveniences, mental anguish, the loss of enjoyment of life and of mental health for which compensatory damages are requested in an amount estimated in Two Million Dollars ($2,000,000).

8.3   Plaintiff has also suffered the loss of past employment compensation and benefits, for which back pay and interest on such back pay is requested.

8.4   Defendant engaged in discriminatory practices, with malice or reckless indifference to the federally protected rights of Plaintiff, and as such should be condemned to payment of punitive damages, which are also requested.

8.5   Plaintiff further requests as an equitable consideration that the referenced disciplinary actions be expunged from his employment record.

8.6   Plaintiff is also entitled, and so requests, the payment by Defendant of a reasonable amount for attorney's fees and the reimbursement of all costs incurred in this litigation.

8.7   Plaintiff also requests all other equitable and legal relief to which he may be entitled.

**WHEREFORE,** Plaintiff Angel Gustavo Rosado Quiñones respectfully requests that this Court grant the instant complaint in all its parts.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of February, 2011.

**LOPEZ TORO**
**Estudio de Derecho y Notaria**
Hato Rey Center, Suite 915
268 Ave. Ponce de León
San Juan, Puerto Rico  00918
Tel. 787-296-0280, Fax. 787-296-0282
ESTUDIOLOPEZTORO@aol.com

*s/Bámily López Ortiz*
**Bámily López Ortiz**
USDC-PR 205410