## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANGEL GUSTAVO ROSADO-
QUIÑONES

      Plaintiff,

               v.

PUERTO RICO TELEPHONE/CLARO
INC.

      Defendant.

**Civil No. 11-1166 (SEC)**

## OPINION AND ORDER

Before the Court are defendant's motion for summary judgment (Dockets # 23 and 42) and plaintiff's opposition thereto (Docket # 36). After reviewing the filings and the applicable law, defendant's motion is **GRANTED**.

### Factual and Procedural Background

Plaintiff Angel G. Rosado-Quiñones filed this federal question suit contesting two suspensions from work and pay. Among other things, the complaint avers that the two suspensions defendant Puerto Rico Telephone/Claro Inc. ("Defendant") handed out represented retaliation prohibited under the anti-retaliation provisions of the Age Discrimination in Employment Act ("ADEA") and Title VII of the 1964 Civil Rights Act ("Title VII"), 29 U.S.C. § 623(d) and 42 U.S.C. 2000e-3, respectively. It also alleges that the suspensions ran afoul of Puerto Rico laws 100 and 115, P.R. Laws Ann. tit. 29 §§ 146 and 194, respectively. The material, uncontested facts presented to the Court follow.

Rosado-Quiñones began his career with Defendant in 1986 as an electrical engineer. He ascended the corporate ladder through the years, and today he holds a managerial post with Defendant. In fact, Rosado-Quiñones had an untarnished personnel record until three years ago, when he received a five-day suspension from work and pay for unilaterally authorizing subordinates to meet with union representatives during working hours. In

pertinent part, Defendant's written disciplinary letter stated:

> On April 2009, you authorized 11 employees of the central office of Guayama and Ponce to conduct a meeting during working hours with Officers of the UIET. The meeting took place in Ponce and lasted one (1) hour, without considering travel time, all paid by he Company but in violation of Practice RH-025-A, which provides the following: "Permission may be granted to be absent during working hours without any deduction in pay whatsoever only by administrative determination of the President of the Company in circumstances that he deems, in the use of his management prerogative, that it should be so used...".

> Further, allowing 11 employees to be away from their functions for more than one (1) hour hindered, limited the services that the Company offers and was an incorrect and misguided decision.

> The Collective Bargaining Agreement in its Article 10 Sec. 3 sets forth that working hours are for each employee to engage on his/her work for the company and you as Administrator are responsible to it being complied with.
>     . . . .

> This fault entails in first offence from a written warning to a 15 working day suspension.

> Because our purpose is for situations as those described above not to occur again, at this time, we are applying a suspension from work and pay of 5 working days, starting Monday, the 11th through Friday, the 15th of May, 2009, with a probationary period of two (2) years for purposes of repeated offenses. You must report to work on Monday, May 18, 2009, during your regular work schedule.

> We remind you that you are part of the management of this Company, therefore, we urge you to preserve the good and sound functioning thereof.

Docket # 33-5.

In disagreement with the suspension Rosado-Quiñones requested reconsideration. According to him, the meeting with union representatives was convened "to gather information regarding a complaint of sexual harassment that two employees had reported

3

directly to him." Docket 36-1, ¶ 9.[1] He further averred that employees "were at work, readily available to take care of any situation that could have arisen during the one hour that the meeting lasted, and [that he] had knowledge of what was going on and the authority to order the cancellation of the meeting at any time, if needed." Id., at ¶ 22. Lastly, he claimed that "meetings between managerial personnel and union employees are a daily practice and always take place during working hours." Id., at 23. Defendant, however, did not budge.

The second suspension from work and pay was handed out in January 2010. This time around, a "tip" Defendant received prompted an internal investigation concerning a supervisor who reported directly to Rosado-Quiñones. The investigation revealed that this supervisor was failing to "meet his regular work schedule, record[ing] his payroll as having worked eight (8) hours, and show[ing] deficiencies in his performance." Docket # 33-6. Defendants also found that "Company property under [the supervisor's] responsibilities had disappeared." Docket # 24, ¶ 14.

A meeting was called to discuss the findings with Rosado-Quiñones. But when consulted about the possible termination of his subordinate, Rosado-Quiñones suggested a less harsher sanction, stating that a similar situation involving a much younger employee had been handled differently. Nevertheless, when push came to shove Rosado-Quiñones went along with Defendant for strategic reasons. Deposition testimony he volunteered shows as much:

> I said this is really tough. But if you decide to terminate him, obviously, I am not going to oppose, because if [he] doesn't go, they're going to fire me. That's what I thought, I didn't say it in those terms, but what I thought was, "I have to follow instructions here, because my opinion is one and they have used what they understand."

---

[1] In his submissions to the Court, Rosado-Quiñones alleges that "[t]he information gathered by the union representatives confirmed the occurrence of sexual harassment . . . ." Id., ¶ 19. The minute taken in the meeting where the information was allegedly gathered, however, does not support Rosado-Quiñones' allegation. See Docket # 45-2, p. 1. At any rate, for the reasons stated below, Rosado-Quiñones' averments, even if true, have no bearing on the adjudication of the present motion.

4

Docket # 33-1, 50:12-19. Thus, after firing the supervisor, Defendant suspended Rosado-Quiñones, stating that the mishaps of his subordinate denoted a poor supervisory performance on his part, "which affect[ed] the operations of our department and is contrary to Company rules." Docket # 33-6. The suspension was to last six days, but was reduced to five on Rosado-Quiñones' reconsideration request.

This suit soon followed. Docket # 1. As stated previously, Rosado-Quiñones' complaint alleges that the two suspensions came about as retaliation prohibited under ADEA and Title VII's anti-retaliation provisions. Id. Specifically, he contends that the two suspensions were reprisals for (1) "participating and promoting the investigation of a complaint of sexual harassment as hostile work environment"; and (2) "denouncing that the termination of [his subordinate] was motivated by his age and constituted a discriminatory disparate treatment based on age." Docket # 36, p. 14.[2]

In due course, Defendant filed the motion for summary judgment now pending, arguing, in essence, that Rosado-Quiñones' suspensions were supported by legitimate, non-retaliatory reasons. Docket # 23.[3] Rosado-Quiñones opposed. Docket # 36.

---

[2] When the first suspension ensued, Rosado-Quiñones allegedly led an effort by employees to challenge changes Defendant intended to institute in the employee pension plan. He therefore also claims that the suspension constituted retaliation for his effort "to organize a group of the most senior managerial employees to challenge the changes to the retirement plan." Docket # 36, p. 14. The statutory predicate to challenge changes to a pension plan is the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1001 et seq. This statute has an anti-retaliation provision of its own. See id. § 1140. Therefore, Rosado-Quiñones' contentions in connection with the pension plan are misplaced, and the Court need not address them further.

[3] Defendant also highlights Rosado-Quiñones' deposition, where he concedes that this suit was filed as a defensive strategy to protect his job. See Docket # 33-1, 52:17-22 ("[W]hen the second [suspension] came in . . . . that's when I decide[d] to file this action to try to protect my job . . . ."). But because Defendant prevails on other grounds, the Court passes no judgment upon these statements, which, if proven true, could give rise to Rule 11 sanctions.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 569(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramirez Rodriguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The summary judgment inquiry is grounded in the factual evidence available, since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).

At any rate, to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  Accordingly, once the party moving for summary judgment has established an absence of material facts in dispute, and that judgment is proper as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Mendez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve").

### Applicable Law and Analysis

*ADEA and Title VII claims*

The substantive law governing this case is uncomplicated and well settled. Both ADEA and Title VII prohibit employer/employee retaliation based on opposition or participation on protected activities. 29 U.S.C. § 623(d) and 42 U.S.C. 2000e-3, respectively. Indeed, with nearly identical language, both statutes provide that an employer may not discriminate against an employee who has opposed any practice made unlawful under the statutes or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the statutes]." Id. This is so because "the

analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases . . . ." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 n. 9 (1st Cir. 1996) (citing Hazel v. U.S. Postmaster General, 7 F.3d 1, 3-4 (1st Cir. 1993). And because the statutes share a common goal: "Congress designed the remedial measures in these statutes to serve as a spur or catalyst to cause employers to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of discrimination." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 358 (1995) (internal quotation marks omitted). Therefore, the First Circuit has stated that ADEA and Title VII precedent on retaliation is largely interchangeable. Fennell, 83 F.3d at 535 n. 9; see also Shinwari v. Raytheon Aircraft Co., 2000 WL 731782, at *4 (10th Cir. 2000) (unpublished) ("Because the retaliation provision of the ADEA is identical in all material respects to the retaliation provision of Title VII, we readily discern congressional intent to approach the two provisions in an identical manner.") (abrogated on other grounds by Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 269 (2001)).

The road to success in a retaliation claim is rather steep, however. At the summary judgment stage, absent direct evidence of retaliation, a plaintiff must rely on the McDonnel Douglass burden-shifting framework, which first calls for a *prima facie* showing of retaliation. McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973); see also Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991) (applying McDonnell Douglass in the summary judgment context). This in turn requires undisputed evidence that (1) the plaintiff engaged in protected conduct; (2) thereafter suffered an adverse employment action; and (3) a casual connection existed between the protected conduct and the adverse action. Mesnick, 950 F.2d at 827. Whether the underlying discrimination can be proven is not a determinative factor in this context. "It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that he acted on it; that the employer knew of the plaintiff conduct; and

that the employer lashed out in consequence of it." Id. (citing Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990)).

After the plaintiff makes the requisite *prima facie* showing, the burden shifts to the employer who must evince a legitimate, non-discriminatory reason for its action. Mesnick, 950 F.2d at 827. The inquiry at this stage ends altogether, however, if the employer shows that it would have made the same decision even in the absence of an unlawful motive. Price Waterhouse v. Hopkins, 490 U.S. 228, 242 (1989) (abrogated by statute on other grounds); see also Tanca v. Nordberg, 98 F.3d 680 (1st Cir. 1996) (holding that Title VII amendments meant to overrule Price Waterhouse did not apply to retaliation claims). In other words, where both lawful and unlawful reasons for the retaliation at issue coexist, an employer would prevail by directing the court to the valid reason; thus, showing that the prohibited animus was not the but-for cause of the retaliation. This so-called but-for defense applies equally to ADEA retaliation claims. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct 2343, 2351 (2009) (holding that actionable ADEA discrimination must be the but-for cause of the adverse action, not merely a contributing factor); Diaz v. Jiten Hotel Mgmt., Inc., 671 F.3d 78, 82 (1st Cir. 2012) (following Gross' holding).[4]

As stated above, Defendant contention is that its actions were supported by legitimate, non-retaliatory reasons. It therefore fails to address whether the suspensions at issue arose in connection with "protected activities." And this Rosado-Quiñones underscored swiftly:

---

[4] In a three-sentence footnote, Rosado-Quiñones argues that "Gross applies only to an ADEA disparate-treatment claim, which is not the case of Rosado[-Quiñones'] claim of retaliation." Docket # 36, p. 17 n. 4. This argument fails for at least three reasons. First, it is perfunctory at best. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived."). Second, it ignores case law that has reached the oppositive conclusion. See e.g. Barton v. Zimmer, Inc., 662 F.3d 448, 455-56 (7th Cir. 2011). Third, ADEA's anti-retaliation provision is meant to complement and strengthen its anti-discrimination provision. Therefore, it makes little sense to limit the but-for defense to the anti-discrimination provision only.

"[D]efendant does not question <u>and thus concedes</u> that plaintiff's retaliation claims comply with [that prong of the *prima facie* test]." Docket # 3 (emphasis added). Rosado-Quiñones is correct. Litigants in this circuit must carry their own weight; courts will not "create the ossature for the argument, and put flesh on its bones." <u>In re DiVittorio</u>, 670 F. 3d. 273, 288-89 (1st Cir. 2012).[5] All the same, brief remarks about the "protected activity" prong of the *prima facie* test are in order here.

Under the anti-retaliation provisions of ADEA and Title VII, for conduct to be deemed "protected," a plaintiff must satisfy either the opposition or participation clauses of the statutes. <u>See</u> <u>DeCaire v. Mukasey</u>, 530 F.3d 1, 17 (1st Cir. 2008) (Title VII case); <u>Kessler v. Westchester County Dept. of Social Services</u>, 461 F.3d 199, 205-06 (2d Cir. 2006)(ADEA and Title VII case).The participation clauses are satisfied when the alleged retaliation stems from participation in a formal proceeding (for example, an administrative or judicial proceeding) brought forth pursuant to any of the statutes. <u>Byers v. Dall. Morning News, Inc.</u>, 209 F.3d 419, 428 (5th Cir. 2000); <u>Vasconcelos v. Meese</u>, 907 F.2d 111, 113 (9th Cir. 1990). Put differently, the "participation clause relates to actions taken in outside, formal statutorily created proceedings." <u>Morris v. Boston Edison Co.</u>, 942 F.Supp. 65, 71 (D.Mass. 1996).

The statutes opposition clauses are much more flexible. In this context, the U.S. Supreme Court has given an ordinary-meaning interpretation to the term "oppose,": " 'to resist or antagonize . . .; to contend against; to confront; resist; withstand,' " or " 'to be hostile or adverse to, as in opinion.' " <u>Crawford v. Metro. Government of Nashville & Davidson County</u>, 555 U.S. 271, 276 (2009). Thus, in <u>Crawford</u>, the Court determined that the opposition clause protected an employee whose "opposition" merely consisted in answering questions the employer had posed during an internal sexual harassment

---

[5] Defendant also fails to address whether the suspensions at issue constituted adverse employment actions, and it argues against the requisite causal connection in passing only. Therefore, the same reasoning applies as to those prongs of the *prima facie* test.

investigation. Id. The Court reasoned: "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Id. (internal quotation marks omitted). This rationale has been followed in the First Circuit on more than one occasion. See Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 31 (1 Cir. 2011) Collazo v. Bristol-Myer Squibb Manufacturing, Inc., 617 F.3d 39, 46-48 (1st Cir. 2010).[6]

In this case, there could be no dispute that Rosado-Quiñones' claims fall outside the scope of the participation clauses of ADEA and Title VII, because the requisite formal proceeding was not in place when the events underlying the complaint happened. The same holds true for Rosado-Quiñones' claim under ADEA's opposition clause. In this regard, the complaint alleges that, "in opposing the extreme sanction of dismissal in the [subordinate] situation [Rosado-Quiñones] specifically referenced age as a deciding factor" (Docket # 1, ¶ 6.4), and that the second suspension came about for that reason (see id., ¶ 6.6). But Rosado-Quiñones' deposition testimony is inconsistent with these allegations—it unequivocally shows that Rosado-Quiñones strategically went along with the termination of his subordinate. See Docket # 33-1, 50:12-19 ("if you decide to terminate him, obviously, I am not going to oppose, because if [he] doesn't go, they're going to fire me."). Therefore, Rosado-Quiñones' allegations under ADEA's opposition clause are problematic at best.

His claim under Title VII's opposition clause might be different. On this front, he states that  the meeting underlying the first suspension was motivated by a good-faith belief that subordinates were victims of impermissible sexual discrimination. See Docket # 36, p.

_____

[6] As stated above, ADEA and Title VII anti-retaliation provisions have practically identical language and purpose. Therefore, there is no reason to circumscribe the preceding case law to Title VII retaliation claims.

7-8. So viewed, the meeting could fall under the expansive definition of "opposition" crafted in Crawford, 555 U.S. at 276. And such finding would be supported by the holding in Collazo, where the First Circuit found that a supervisor had "opposed" an alleged sexual harassment by assisting a subordinate schedule a meeting with human resources personnel and by providing the company with his impressions about the serious nature of the allegations at issue. 617 F.3d at 46-48.

Be that as it may, Defendant sidestepped the foregoing analysis in its entirety and instead went all in with the argument that Rosado-Quiñones' suspensions were supported by legitimate, non-retaliatory reasons—that is, the but-for defense. In this regard, concerning the first suspension, Defendant underscores the fact that Rosado-Quiñones, without corporate authority, allowed subordinates to be absent from work on paid company time. Docket # 23, p. 4. Defendant thus reasons that "[t]his action showed poor judgment as a supervisor" inasmuch that the "decision not only forced the Company to pay salaries to employees that were not directing their efforts at their jobs but left the corresponding workshop unattended." Id. Defendant also directs the Court to the disciplinary letter Rosado-Quiñones received, which establishes concrete company policies contravened by his unilateral decision. Docket # 33-5.  As to the second suspension, Defendant first highlights the mishaps of Rosado-Quiñones' subordinate. Docket # 33. Then it explains away the suspension, stating that such mishaps ran contrary to Rosado-Quiñones' supervisory responsibilities. Id. The disciplinary letter issued in this occasion also indicated the concrete company policies underlying the suspension. Docket # 33-6.

Rosado-Quiñones does not contest the merits of the suspensions. Rather, he argues that the suspensions were handed out for improper motives (retaliation), and that neither Title VII nor ADEA anti-retaliation provisions allow for the but-for defense. Docket # 36, p. 17. Under his interpretation of the law, "[i]f other factors could have been involved in

[Defendant's] decisionmaking process, then [his] burden, both under Title VII and ADEA, is to show that despite those other factors, the disciplinary actions would not have been taken without retaliatory animus." Id. Notably, however, Rosado-Quiñones' averments (which are accompanied by no legal citation) ignore Tanca, where the First Circuit unequivocally concluded that Title VII retaliation claims succumb to the but-for defense. 98 F.3d at 682-85. Similarly, Rosado-Quiñones' exposition bypasses applicable case law stating that ADEA liability is only possible in the absent of the but-for defense. See Gross, 129 S.Ct. at 2351 (2009) (holding that under ADEA, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action"); see also Diaz, 671 F.3d at 82 (discussing and applying the but-for defense in ADEA case). A little research and study should have allowed Rosado-Quiñones to unearth the foregoing legal authority. Accordingly, Defendant's motion for summary judgment is **GRANTED**.

*Supplemental State Law Claims*

Recently, in Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed before trial, . . . . the state claims should be dismissed as well." Id. (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, (1966)). It reminded, however, that such general principle is no "mandatory rule to be applied inflexibly in all cases[,]" id. (citation omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). Such determination implicates a weighing of several factors: to wit, comity, judicial economy, convenience, and fairness. Id. (citations omitted). Having evaluated the foregoing factors, the Court declines to exercise supplemental jurisdiction in this case and notes that comity will be served by permitting the Commonwealth courts to resolve the state-law issues at play here.

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**; all federal claims are therefore **DISMISSED with prejudice**, and the state-law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of May, 2012.

s/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge